Morning. I'm Ralph McCarthy, the co-chair appellant in this matter. There's actually only three issues involved. They go to the jurisdictional requirements alleged by the FDIC with reference to their claims processing. This court in the Sharpe matter, of course, took the position that I thought pretty clearly that the, I'll refer to it as FERA, administrative provisions for claim filing did not apply to debtors. It only applied to creditors, a proposition with which I thought made good sense since the asset, the debt and the trustee had no direct relationship to reimbursement of the of the FDIC for depositor insurance accounts. And what happens is, you know, I've alleged that and set it forth and it's recognized pretty well, I think recognized by this court in Sharpe that they have a procedure of grabbing every asset in sight when they foreclose on a particular bank, whether it's a creditor situation or whether it's a debtor situation. And the evil of it is that they not only do that, they do not disclose to the public on pending loans that the institution has become insolvent. And that they have the power to take over the debt, the debt that's being negotiated and sell it off to a discount house. That's exactly what's happened in this case. I allege they threatened to do so in the original complaint. And as a matter of fact, they started to. And I don't know. I would ask the court to take a little notice that I was forced into bankruptcy subsequently and proceeded in the bankruptcy matter to. Of course, there was an automatic stay on any foreclosure sale actions by the FDIC or otherwise. And I filed an adversary proceeding in that. In the bankruptcy action, trying to restrain Beale Bank, who was the assignee of superior FDIC on my trustees. I had previously given them a copy of Beale Bank. I had given them a copy of the complaint in pending matters, which is essentially before this court. Nevertheless, I received in the mail. I think three days ago that Beale Bank, who was the assignee, obtained a substituted trustee instead of Mr. Fossard, the one that I named in the original complaint. And I've noticed a sale under very tight Missouri law restrictions to sell my property up from under me. The sales notice for the 15th of this month. I intend upon completion today to go out to Missouri, see if I can do anything about it directly. But I thought that the court should be aware of that simply because it's the very action, the very evil that I complained of with reference to what the FDIC is doing in these cases. And I think it's a very substantive issue that goes to, I'm sure, many cases other than mine. The bottom line being, does the FDIC have any jurisdiction to take over a debtor asset on a solvent bank? And turn around and sell it literally to their Beale Bank clearinghouse. Such sales normally being made at, I understand, 50 cents on the dollar. Of course, Beale is literally almost exclusively in the business of proceeding with foreclosure actions and so forth on assignments from the FDIC. Other than that, this case, therefore, illustrates very graphically, I think, the evil of requiring a person such as myself to have to go through asking the very tort chaser to judge his own claim as a condition precedent. Well, I filed this action because all the transactions between myself and the FDIC or its representatives superior. It took place after the FDIC had foreclosed superior and interrupted with a question here. How how does how is that different from the requirement in a normal federal tort claims action that is brought against a federal agency that you are essentially asking the agency to adjudicate its own either negligence or malfeasance, whatever the basis of the tort claim might be? Well, it's not different than the normal tort claim procedures. My objection here is that when they are confiscating by concealment, literally an asset that's being negotiated at the time sequence wise. FDIC had closed superior. I had had a long process. No one ever told me. I discovered some months later. I understand. I read your briefs and we understand the facts. But I'm I'm trying to understand the significance of your argument that it's unfair to ask the FDIC to adjudicate your administrative claim because of the fact that it involves allegations of malfeasance, a breach of fiduciary duty and so on. How is that different from similar claims that are filed in tort against other federal agencies where we require exhaustion of administrative remedies prior to invocation of federal jurisdiction? Well, you mean as relates to their internal procedures and adjudicating? I think your point is, unless I misunderstood what you said, that you're you're asking the agency to essentially decide whether it engaged in misconduct and that that's not fair, because how can you ever expect an agency to admit when it is adjudicating that kind of an administrative claim that it was wrong? And my question for you is, why is that any different? Because here the other complaint is against the FDIC itself for post receivership actions and confiscation of an asset. I submit that my lawsuit and the underlying claim is falls under the general sovereign immunity statutes applicable to actions by the by and against the FDIC. But to try to respond specifically, if you're asking me, is there a difference administratively on what happens in the FDIC? The difference in the nature of the claim, I guess, is is my question for you. It sounds to me like like your argument is that it's not fair that you have to first present your claim to the agency that engaged in the misconduct, that that's a complete waste of time because no agency, according to your argument, would ever admit that it had done anything wrong. But I don't see where that's any different from any other kind of an exhaustion requirement where we normally require a claimant to first file an administrative claim and either have it denied or wait for the passage of six months or 60 days or whatever the time period is before jurisdiction arises in federal district courts to adjudicate it, either under civil rights action or a Bivens action or whatever it might be. Well, I suppose the proper response to your question is that I felt there was never in place any jurisdictional or other requirement for me to file any claim. And that therefore, to file one after the fact, at the time I was made known, for instance, about the claim procedures, I was already in court. And they came in on the basis that I had not complied with these agreements. And that was the basis of the lower courts dismissing the basis of no subject matter jurisdiction. Having taken the position, apparently, that any and all claims, whatever, against the FDIC have to go through the administrative process. If that were true, the lower court is repealing an awful lot of cases in the law. The Sharp case, the Holman case, Holman case, I believe, applies to acts post-receiver. And in this instance, you see, the claim arose after the confiscation of the asset and the closure of the underlying bank. I was in the process and had been negotiating along. I assume the court's familiar with those facts. I'm just simply trying to point out that right in the middle of those negotiations, they told me that they were going to they wanted a new loan. I explained in the facts how that came about. And I was over the barrel. The defendants put me in a situation of coercion. Literally, I could either forfeit my property. So I bargained back and said, well, give me a free payment. Right. And then I don't care. I'll put this in effect and go solve my problems elsewhere by alternate financing. And there was such a prepayment right included in the trustee mortgage. However, we never got there. Mr. McCarthy, your time has expired, so perhaps we could hear from the FDIC. Sure. May it please the Court, I'm Scott Watson from the FDIC. I'm here today representing the FDIC as the receiver for Superior FSB and as receiver for Superior Federal FSB, which has also been called New Superior. The only issue before this case is the jurisdictional issue. And it's a relatively straightforward case because it's undisputed that Mr. McCarthy did not file an administrative claim. And the district court of. . . How do you get around our decision in Sharpe? Pardon me, Your Honor? How do you get around our decision in Sharpe? I believe the decision in Sharpe is very limited to its own facts and clearly does not establish the rule that Mr. McCarthy seeks. The rule Mr. McCarthy seeks is that a debtor does not fall within the claims process. And the Sharpes weren't debtors at all. The Sharpes were in a very unusual position, which is what the Sharpe case noted. Weren't debtors or weren't creditors? You're switching terms on me here. Well, the Court found that they were not creditors for purposes of FIREA. Creditors. For purposes of FIREA. You would agree that Mr. McCarthy was not a creditor at that point? I disagree that Mr. McCarthy was not a creditor as a claimant against the receivership. How do you get from debtor to creditor then? By making a claim against the institution and a. . . He's not a creditor until he obtains a judgment. Then he's a judgment creditor. And he doesn't have a judgment at this point. He's just a claimant. But the language of FIREA that places his claim within the claims process in D13D is a reference to a claimant for any claim or action for payment from or an action seeking a determination of rights with respect to the institution or any claim relating to any act or omission of a receiver. Then why is this different from the Sharps who presented a cashier's check which had been issued on the institution and demanded payment on their claim of $530,000 or whatever the amount was? Because the Sharps case was focused on the contractual nature. It recognized the breadth of FIREA but found that there were two instances where there was an exception to the claims process. The first was for affirmative defenses, which it noted from the Midwest case. And the second was the set of facts before it where an aggrieved party to a contract that had been fully performed by the Sharps but was breached by the FDIC, that that aggrieved party was not subject to the FIREA claims process. That's at page 126F3 at 1157. That's the holding in Sharps. The discussion of creditors was really a rejection of the FDIC's argument in the case that they were depositors in essence and therefore were creditors and the court rejected that definition of creditor. And there is some discussion of creditors in the case, but it doesn't hold that debtors are outside the scope of the FIREA claims process. And the other courts to consider it have all found that they are. And it also limited its examination to that breach of contract where the FDIC had a repudiation right but did not exercise it. And we would urge this court to find and to remain consistent with the other decisions that it's limited to that set of circumstances and the specific holding in Sharps about aggrieved parties to a contract that's been breached by the FDIC. The focus at 1157 of the court's rationale and its statement of its holding was that that was what it was holding because the repudiation power did exist and the FDIC didn't exercise it. It examined the Winstar case and then discussed Winstar as supporting its conclusion that aggrieved parties to a contract are outside the process. And, in fact, a subsequent decision of this court, Batista, described the holding in Sharp as being a holding that aggrieved parties to a contract breached by FDIC are outside the claims process. But they weren't examining what... It does so in the context of a discussion of whether or not they are creditors. And its rationale lies in the conclusion that they are not. And, therefore, they are not subject to the FIRERA claims process. Why isn't Mr. McCarthy in exactly the same position? He's not a creditor. Because while that's the discussion, I don't believe that that yields a fair characterization of the rationale the court relied on. There's a discussion of creditors... Well, let me read you the language and tell me why this isn't directly applicable. And I'm reading at 1156. We conclude here that the Sharps were not required to submit their cause of action to the FDIC administrative process because they are not creditors of the FDIC. That statement is later supplemented by their examination of them not being creditors for purposes of the claims process in FIRERA. And it examines the contractual nature of the obligation. And when they later actually get to what they're holding and what they're examining, but... So is that your position? It is our position that as the other circuits to examine the issue upheld, if the exception in Sharp were to suddenly reduce the claims process to only those preexisting creditors prior to the failure of the institution who had not yet obtained their judgment, that there were claimants against, but were not yet known creditors who were owed money by the institution, that that would subsume the claims process itself. And as we pointed out... Is that the situation that the Sharps were in? I mean, they were making a claim for conduct that had occurred prior to the receivership, and they were seeking whatever the amount was. They were basically trying to get the institution to honor its obligation to pay them money. But I think their focus is on what the FDIC did in breaching the contract rather than repudiating it, not on generally the nature of their claim. Rather, it was the specific nature of the claim. In fact, the Sharps came in and the Sharps filed a claim prior to instituting their lawsuit. They actually filed a claim with the receiver. So we look not at the fact that they are tendering a cashier's check and asking the receiver to honor it. We look at the fact that they are claiming misconduct by the receiver because it won't honor an otherwise valid cashier's check. Is that the distinction you're asking us to draw? Yes. The distinction is in the court's examination of ultimately why it felt that this claim, and I do believe that in order to reconcile it with the plain language of the statute, that you have to examine the rationale that the court was applying and how it ultimately found under all of these facts that this claim for breach of contract fell outside the claims process. And I think that they did take into account the existence of the repudiation power, that their general discussion of creditors is not the holding. And it certainly doesn't extend to any ‑‑ it doesn't examine whether any creditor who has not yet fully obtained judgment, it falls outside the claims process as Mr. McCarthy would have it believed, that any debtors not yet brought its claim is outside the claims process. The court's examination, the D.C. Circuit and Freeman examined debtors as well as Stan and other cases, and the plain language of the statute. Then we turn to the court's decision in Parker North American Corporation versus RTC, and Judge Hall for our court goes on for pages talking about the fact that the distinction between creditors and debtors and the fact that in that case, because it was not a creditor claim, then the claims exhaustion requirement doesn't apply. I think, Your Honor, as we pointed out in our brief, the examination in Enright Parker is in the context of bankruptcy, whether not being a creditor effectively makes that party's claim in the nature of an affirmative defense. It's looking at it in the context of bankruptcy. Well, I guess it does cite to a number of bankruptcy decisions. That's true. And it explicitly says that it found, and this makes it consistent with the Midwest case, it explicitly found that the claims were in the nature of an affirmative defense. And if you'll permit me, I've got a citation to that. In this case, we think the debtor's preference action is in substance and affirmative defense, Parker. And in order, again, to reconcile that holding with the plain language of the statute and the other cases that have found it, Freeman made the same examination that outside the bankruptcy context, that in the bankruptcy context, it made sense and, indeed, the court's concern with the possible interference with confirmation was a valid concern that does not exist outside the bankruptcy context. And that's another reason to distinguish Parker and to limit it. Again, as Sharpe found, we don't dispute that Sharpe found that there are exceptions to an absolute requirement for every claim. But it's limited in its circumstances. And we would urge this Court to so limit Sharpe, to not expand Sharpe so as to bring every potential claim, just because it's brought by someone indebted to an institution, to take it outside the statute, which clearly says that a claim or an action for payment from or with determination as to the rights of, determination as to the assets of the receivership or with regard to any act or omission of either the receiver or the failed institution. In this case, as he admitted here, speaking with you, Mr. McCarthy just felt he was outside the claims process. But the claims process did not act as some mysterious bar behind which the FDIC could hide. Rather, the claims process allowed him to present, as you raised during his oral argument, Your Honor, Congress wanted, and the legislative history would provide it as well as the plain language, makes it clear Congress wanted the receiver to have the first crack at all claims against the receivership estate and for his own wrongs. And Congress made a very comprehensive plan to do that, allowing the receiver to have an opportunity to review those and deny them and then provide Mr. McCarthy with de novo review in a court should he decide to continue if it were declined or if the FDIC didn't act. And I recognize that, have I actually gone over my time, Your Honor? We would respectfully urge you to affirm the district court. Thank you. Your Honor, I didn't please the court. I didn't mean to exclude my other objections to this process, the main one being Bowen versus the United States, saying where there is not a mailed notice to a known whether you call me dead or credit or anything else. The whole procedure is constitutionally infirm. And secondly, I would like to call the court's attention to, of course, in addition to Parker and Sharp. I'll be very candid about it. There's a whole split in the district courts as to whether they're going to file this dead or credited thing or they're not. And it's a split in the circuits. Some of the circuits have taken the position point blank that any and all claims regardless have to be filed. I have been relying on the Sharp case initially, and I would point out before any questions arise about claims, I'm already in both the jurisdiction of the federal district court in a positive action against the FDIC. Well, of course, the short answer, though, Mr. McCarthy, is if we don't have jurisdiction, whether you've whether you got to federal court first doesn't matter. We either have jurisdiction. Oh, yes. Yes. Well, what I'm saying is at least at that point, until a motion to dismiss is made, I'm jurisdictionally proper in the federal district court. In that sense, you see, and here's to I think to respond just lastly to your question about what's unfair or fair either way. You see, he would rely, I'm sure, on the idea of the late claims procedure. And with this not adequate notice under both the Lopez Flores case that I cited, even though it's a lower court case, expressly holds that late claims procedures were invalid. They did not overcome constitutional objections when no notice was given. Now, the last point is that he says I am limited to a de novo review in court. That's an entirely different scope of review than I would be allowed on my regular case. And therefore, my appeal is to the federal district court and to this court. I know of no other remedy as relates to the what I call the tyranny of the FDIC. Thank you. Thank you. Thank you, counsel. The matter just argued will be submitted. We're submitting the matter and it will be decided.
judges: Wallace, Rymer, Tallman